IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PROFESSIONAL LOCATE and RECOVERY, INC., | ) ) ) |
| Plaintiff, | ) ) |
| v. | )   CIVIL ACTION 07-0175-WS-C ) |
| PRIME, INC., *et al.*, | ) ) |
| Defendants. | ) |

**ORDER**

This matter comes before the Court on defendant Elliott Law Offices, P.A.'s Motion to Dismiss for Lack of Personal Jurisdiction (doc. 55). The Motion has been briefed and is now ripe for disposition.

**I.      Background.**

Plaintiff Professional Locate & Recovery, Inc. ("Professional") brought this action against defendants Prime, Inc. ("Prime"), GAB Robins North America, Inc. ("GAB Robins"), and Elliott Law Offices, P.A. ("Elliott") alleging state-law claims of breach of contract, bad faith, negligence/wantonness, fraud, conspiracy and statutory liability.

According to the First Amended Complaint (doc. 50), Professional, a company in the automobile repossession business, obtained a liability insurance policy from defendant Prime to cover its repossession activities, for which it paid Prime certainly monthly premiums and provided certain monthly reports of the vehicles it repossessed. Upon being served with a lawsuit (the "*Jackson* Action") brought against it by the owner of a vehicle that it had repossessed, Professional tendered defense of that case to Prime and sent proof of payment for the coverage to GAB, Prime's agent. Although Prime and GAB initially provided a defense to Professional in the *Jackson* Action, the First Amended Complaint alleges, Prime had never actually obtained coverage for Professional for the policy period in question, even though Prime had accepted premium payments from Professional for that period. Rather than inform

Professional of this omission, Prime, allegedly in concert with defendants Elliott and GAB, terminated the defense based on false representations about the scope of insurance coverage provided, leaving Professional to pay defense costs and bear risk in the *Jackson* Action, which culminated in entry of a $250,000 judgment against Professional.

For purposes of the instant Motion, the First Amended Complaint's allegations concerning Elliott are critical. Plaintiff maintains that Elliott (counsel for Prime in the insurance coverage dispute) conspired with GAB and Prime to conceal Prime's failure to obtain insurance coverage for Professional, and that Elliott sent a letter to Professional in Alabama misrepresenting the reasons why the defense was being terminated in the *Jackson* Action. According to the First Amended Complaint, "[t]his letter was an overt act in the conspiracy to oppress, deceive and defraud the Plaintiff and was in furtherance of the negligent failure of Prime to comply with its obligations and in violation of Alabama statutory law respecting the business of insurance." (Doc. 50, at ¶ 19.) When Professional hired Alabama counsel to dispute Prime's position on coverage, Elliott "continued to misrepresent and conceal the lack or non-existence of any actual insurance" to Professional's counsel in Alabama both in written correspondence and via telephone, despite actual knowledge of the true facts. Plaintiff characterizes this conduct as an overt act in the conspiracy to deceive and defraud Professional. (*Id.*, ¶ 20.)

Plaintiff's bad faith claim alleges that "Prime itself and in conspiracy with Elliott failed to timely, cognitively, and fairly investigate the claim of the Plaintiff" (*id.*, ¶ 27), and that such omissions were reckless, intentional, and designed to injure Professional. The First Amended Complaint further asserts that Elliott's representations to Professional about insurance constituted fraud because they were false and were known to be false, and that Elliott recklessly and/or intentionally suppressed material facts from Professional concerning Prime's failure to provide insurance coverage to it. In the conspiracy claim of the First Amended Complaint, Professional alleges that GAB, Elliott and Prime all conspired with one another by fraudulently denying coverage and making false and misleading communications with Professional, all with the intent to mislead plaintiff into believing that Professional did have insurance coverage with Prime, but that such insurance simply did not cover the *Jackson* Action, when in fact no such insurance existed.

In a nutshell, then, plaintiff's claims are that it paid Prime premiums for insurance coverage that Prime never obtained; that Prime cut bait when plaintiff attempted to invoke that coverage for a defense against the *Jackson* Action; and that Prime, GAB and Elliott conspired to mislead and deceive plaintiff about the reasons why the defense was prematurely terminated in the *Jackson* Action, with Elliott directing intentionally false communications on that subject to Professional and its Alabama counsel.

## II.   Legal Standard for Personal Jurisdiction Defense.

Where a district court in its discretion decides a personal jurisdiction issue without an evidentiary hearing, it is the plaintiff's burden to establish a *prima facie* case of personal jurisdiction over a nonresident defendant. *See, e.g., Stubbs v. Wyndham Nassau Resort and Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006); *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002); *S.E.C. v. Carrillo*, 115 F.3d 1540, 1542 (11th Cir. 1997). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Stubbs*, 447 F.3d at 1360 (citation omitted). In considering the adequacy of a plaintiff's proffer, district courts accept as true all facts alleged in the complaint, to the extent they are uncontroverted by a defendant's affidavits. *Carillo*, 115 F.3d at 1542. Where a plaintiff pleads sufficient material facts to show a basis for personal jurisdiction and where a defendant submits affidavits controverting those allegations, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier*, 288 F.3d at 1269. If the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, then all reasonable inferences must be construed in the plaintiff's favor. *See id.*

The traditional two-step personal jurisdiction inquiry of assessing the propriety of jurisdiction under the forum state's long-arm statute and then determining whether the exercise of jurisdiction would violate the Due Process Clause collapses into a single step in Alabama, inasmuch as Alabama's long-arm statute authorizes the exercise of personal jurisdiction to the full limits of the U.S. Constitution. *See, e.g., Sloss Industries Corp. v. Eurisol*, 488 F.3d 922, 925 (11th Cir. 2007) (in Alabama, "the two inquiries merge, because Alabama's long-arm statute permits the exercise of personal jurisdiction to the fullest extent constitutionally permissible");

*Matthews v. Brookstone Stores, Inc.*, 469 F. Supp.2d 1056, 1060 (S.D. Ala. 2007) ("In Alabama, this two-pronged inquiry collapses into a single question because Alabama's long-arm provision permits its courts to exercise personal jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment.").

Due process authorizes the exercise of personal jurisdiction over a nonresident defendant when "(1) the nonresident defendant has purposefully established minimum contacts with the forum;" and "(2) the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice." *Carrillo*, 115 F.3d at 1542 (citation omitted); *see also Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005).

## III.    Analysis.

### A.    *Relevant Facts.*[1]

The following facts concerning Elliott's relationship to the State of Alabama are established as a matter of record and have not been controverted:  Elliott is a professional association formed for the practice of law.  (Elliott Aff. (doc. 55, Exh. 1), ¶¶ 2-3.)  It was organized in Minnesota, has its principal place of business in Minnesota, and is comprised of members who are licensed to practice law in Minnesota, Colorado, South Dakota, Wisconsin and Arizona.  (*Id.*, ¶¶ 2, 4.)  Elliott has no lawyers who are licensed to practice law in Alabama, or who have ever resided in Alabama.  (*Id.*, ¶¶ 4, 6.)  No clients of Elliott are located in Alabama, and Elliott has never advertised, solicited business, maintained records or office space, or owned real property in Alabama.  (*Id.*, ¶¶ 5, 7.)

The sum total of Elliott's contacts with Alabama pertaining to the subject matter of this litigation is as follows:  Elliott undertook to represent Prime (a Missouri corporation with its principal place of business in Ohio) in connection with Prime's insurance coverage dispute with

---

[1] To allow for adequate development of the record on this Rule 12(b)(2) Motion, the undersigned extended the briefing schedule so that Professional could engage in jurisdictional discovery.  (*See* doc. 17.)  In fact, and thanks in part to certain other delays, the Rule 12(b)(2) issue was not taken under submission by this Court until three and a half months after Elliott first filed a motion challenging the existence of personal jurisdiction.  In light of these circumstances, as well as those set forth in the Order (doc. 61) entered on July 6, 2007, Professional has been afforded ample opportunity to explore Elliott's contacts with the State of Alabama.

Professional concerning the *Jackson* Action. (*Id.*, ¶ 8.) During the course of that representation, no representative of Elliott traveled to Alabama, nor did they apparently appear in an Alabama court. (*Id.*, ¶ 11.) However, Elliott did write one letter to Professional in Alabama (with a copy to counsel), wrote one letter to Professional's counsel in Alabama, received two letters from Professional's Alabama counsel, and participated in telephonic contact with Professional's Alabama counsel. (*Id.*, ¶ 9.)

There is no evidence, then, that Elliott has had contacts of any kind with the forum state other than sending two letters to Alabama and having telephone conversations with an Alabama lawyer, all in the scope of a specific legal representation undertaken by Elliott from its Minnesota offices of a Missouri corporation headquartered in Ohio. However, those letters and telephonic communications are alleged in the First Amended Complaint to have been fraudulent, misleading, and overt acts in furtherance of the alleged conspiracy among Elliott, GAB and Professional. Simply put, Professional claims that Elliott directed communications to it in Alabama in which Elliott intentionally lied about the insurance coverage issue, for the express purpose of misleading, defrauding and deceiving Professional about Elliott's client's failure to procure insurance coverage for it, resulting in injury to Professional in Alabama. Professional maintains that these contacts give rise to both specific and general personal jurisdiction over Elliott herein. In response, Elliott's affidavit does not deny that these communications took place, but does state in general terms that it "did not participate in any conspiracy. Also, there was no conspiracy." (*Id.*, ¶ 12.)

### B.     *Application of Law to Facts.*

The minimum contacts analysis varies depending on whether the type of jurisdiction asserted is general or specific. Indeed, facts supporting "[p]ersonal jurisdiction may be general, which arise from the party's contacts with the forum state that are unrelated to the claim, or specific, which arise from the party's contacts with the forum state that are related to the claim." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 747 (11th Cir. 2002). As Professional has contended that both theories support personal jurisdiction over Elliott, the Court will consider each.

#### 1.     *General Jurisdiction.*

"General personal jurisdiction arises when a defendant maintains continuous and

systematic contacts with the forum state even when the cause of action has no relation to those contacts." *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp.2d 1232, 1241 (S.D. Ala. 2006); *see also Sloss*, 488 F.3d at 925 n.3 ("general jurisdiction ... can only be exercised if the defendant has 'continuous and systematic' contacts with the forum"); *Nippon Credit*, 291 F.3d at 747 (similar). In opposition to Elliott's Motion, Professional first maintains that Elliott's acts of writing two letters to persons in Alabama give rise to general personal jurisdiction. This argument flies in the face of black-letter law. Under no rational interpretation can the mere acts of directing two letters to persons in Alabama and conducting a few telephone calls with Alabama residents possibly rise to the level of "continuous and systematic" contacts with the forum state. Besides, plaintiff's attempt to derive general jurisdiction from Elliott's contacts with the forum state relating to this action is clearly improper. *See Stubbs*, 447 F.3d at 1360 n.3 ("General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated."); *Nippon Credit*, 291 F.3d at 747 (similar). This is not a general jurisdiction case, and the uncontroverted averments in the Elliott Affidavit are flatly inconsistent with a general theory of personal jurisdiction.[2]

To reinforce the point, one need look no further than *Snow v. DirecTV, Inc.*, 450 F.3d 1314 (11th Cir. 2006), wherein the Eleventh Circuit refused to find general personal jurisdiction in a materially similar action where the law firm's general contacts with the forum state were more substantial than Elliott's. In *Snow*, the plaintiff sued a law firm located in the State of Washington for alleged wrongdoing in connection with representing its client, DirecTV, in Florida legal proceedings. Although the defendant law firm had represented DirecTV in

---

[2] Professional's brief cites a handful of authorities that it contends support a finding of general jurisdiction based on multiple telephone contacts and correspondence by attorneys. The Court has reviewed those cases, and finds that they all address specific jurisdiction, rather than the continuous and systematic contacts of general jurisdiction. *See, e.g., Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 332-33 (5th Cir. 1982) (out-of-state defendant's single long-distance telephone call was alleged to constitute a tort in Mississippi and therefore was sufficient to confer jurisdiction); *National Egg Co. v. Bank Leumi le-Israel B.M.*, 504 F. Supp. 305, 314 (N.D. Ga. 1980) (similar). While such authorities may be relevant to plaintiff's position on the question of specific jurisdiction, they are inapposite to the issue for which they were cited, to-wit: whether Elliott has continuous and systematic contacts with Alabama sufficient to justify the exercise of general personal jurisdiction over it.

multiple actions in Florida, the *Snow* panel concluded that general personal jurisdiction was lacking, under the following reasoning: "[defendant]'s negotiations on DirecTV's behalf with some Florida residents, its seven appearances as counsel of record for DirecTV, and its representation of four Florida clients in Washington courts are not enough to establish general jurisdiction, when balanced against [defendant]'s lack of a physical presence in Florida, its non-solicitation of Florida clients, and its deriving less than one percent of its revenues from matters connected with Florida." *Snow*, 450 F.3d at 1319. In the case at bar, Elliott's general connections with the forum state are more attenuated than those deemed insufficient in *Snow* to give rise to general personal jurisdiction. Accordingly, Professional cannot defeat Elliott's Rule 12(b)(2) motion on general jurisdiction principles. The personal jurisdiction analysis must stand or fall on the theory of specific jurisdiction.

### 2.     *Specific Jurisdiction.*

#### a.     *Minimum Contacts.*

In contrast to general jurisdiction, "[s]pecific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." *McGow v. McCurry*, 412 F.3d 1207, 1214 n.3 (11th Cir. 2005) (citation omitted). The exercise of personal jurisdiction on a specific jurisdiction theory is proper where a defendant's contacts with the forum state satisfy all of the following criteria: (1) they are related or give rise to the plaintiff's cause of action, (2) they involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and (3) the defendant's contacts with the forum are such that the defendant should reasonably anticipate being haled into court there. *See, e.g., Sloss*, 488 F.3d at 925; *McGow*, 412 F.3d at 1214; *Vermeulen v. Renault, U.S.A., Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993). That said, the Court recognizes that a minimum contacts analysis is "immune to solution by checklist," and that such contacts must be viewed both quantitatively and qualitatively. *Sloss*, 488 F.3d at 925.

In the undersigned's view, the critical fact for purposes of evaluating the Rule 12(b)(2) Motion is that Elliott is alleged to have directed intentional misrepresentations at Alabama residents in Alabama via correspondence and telephone calls. In myriad cases, courts have found that an out-of-state defendant's intentional tortious communications directed at in-state plaintiffs create sufficient minimum contacts to support the exercise of personal jurisdiction over

the defendant in a manner that comports with the Due Process Clause. *See, e.g., Brown v. Flowers Industries, Inc.*, 688 F.2d 328, 333-34 (5th Cir. 1982) (reversing district court's dismissal for want of personal jurisdiction where Indiana defendant initiated defamatory telephone call to Mississippi plaintiff, where the call allegedly constituted an intentional tort whose injurious effect fell in Mississippi and was leveled entirely at a Mississippi resident, all of which defendant could have foreseen); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999) ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment."); *Hafen v. Strebeck*, 338 F. Supp.2d 1257, 1262 (D. Utah 2004) (minimum contacts satisfied when non-resident defendant made telephonic misrepresentation to in-state plaintiff, because defendant knew that he was directing his conduct to a specific person in this state and that such misrepresentation would cause plaintiff harm); *Coblentz GMC/Freightliner, Inc. v. General Motors Corp.*, 724 F. Supp. 1364, 1369 (M.D. Ala. 1989) ("when the origin of a deliberate, nonfortuitous tort is in one state ... and the intended injury to a recognized victim is in another state, the tortfeasor has affirmatively established minimum contacts with the state in which the injury occurred, if the tortfeasor knew at the time it committed the alleged tort that the victim would be injured in that state"); *David v. Weitzman*, 677 F. Supp. 95, 99-100 (D. Conn. 1987) (similar); *McDonald v. St. Joseph's Hosp. of Atlanta, Inc.*, 574 F. Supp. 123, 126 (N.D. Ga. 1983) ("there are a number of cases in which the requisite 'minimum contacts' were found when a nonresident defendant's only contact with the forum state was the introduction of a single misrepresentation into the forum state via a telephone conversation").[3]

Several cases from other jurisdictions involving out-of-state attorney defendants are illuminating on this point. For example, in *Resolution Trust Corp. v. Farmer*, 836 F. Supp. 1123 (E.D. Penn. 1993), an out-of-state law firm was sued on grounds of fraud and misrepresentation, RICO and professional malpractice, based on an allegedly fraudulent opinion letter it had presented to the plaintiff in Pennsylvania. In finding that the exercise of personal jurisdiction

---

[3] *See also Carlyle v. Palm Beach Polo Holdings, Inc.*, 842 So.2d 1013, 1017 (Fla. App. 4 Dist. 2003) (collecting cases for proposition that nonresident defendant who makes telephonic or written communications into the forum state that are in and of themselves tortious can properly be subjected to personal jurisdiction in that forum).

over the law firm was constitutionally permissible, notwithstanding the fact that its only contacts in Pennsylvania were done exclusively in the course of representation of a client, the *Farmer* court opined that the firm "knowingly made fraudulent misrepresentations to persons within this forum upon which those persons relied to their detriment. Therefore, [the out-of-state law firm] should have reasonably anticipated being haled into court in Pennsylvania as a result of those transactions." *Farmer*, 836 F. Supp. at 1129.

The Court also finds persuasive the reasoning of *Mirotznick v. Sensney, Davis & McCormick*, 658 F. Supp. 932 (W.D. Wash. 1986). In *Mirotznick*, Idaho attorneys signed an opinion letter that they intended to be sent to a party in Washington. Based on alleged false statements in that opinion letter, the Idaho attorneys were sued in Washington for, among other things, fraud, deceit and negligent misrepresentation. The Idaho attorneys maintained that personal jurisdiction could not be exercised over them in Washington because their contact with that state was incidental to services they were providing to an Idaho client in Idaho, such that they had not engaged in purposeful conduct directed at Washington. The *Mirotznick* court disagreed, emphasizing that the opinion letter sent to Washington (and hence, the Idaho attorneys' contact with Washington) was the precise reason why they were being haled into court in Washington. In short, Idaho counsel's signing of the opinion letter with the intent that it be sent to Washington "is the very conduct that is alleged to have been tortious and to have resulted in injury in Washington. The defendants are not charged with untargeted negligence but rather with tortious conduct knowingly directed at important matters in the forum state. Under those circumstances, the defendants should have reasonably expected to have been haled into court here to answer for their actions." *Mirotznick*, 658 F. Supp. at 942-43.

Much like *Farmer* and *Mirotznick*, the case at bar involves allegations that an out-of-state law firm intentionally directed fraudulent communications at an in-state resident, with the intent to deceive and injure that in-state resident.[4] Under the well-established principles documented in

---

[4] For example, Paragraphs 19 and 20 of the First Amended Complaint allege a course of conduct by which Elliott's communications with Professional intentionally concealed and suppressed Prime's failure to obtain insurance coverage for Professional despite receipt and acceptance of premium payments for same. Regarding Elliott's letter, specifically, the Complaint alleges that it "was an overt act in the conspiracy to oppress, deceive and defraud the

the foregoing authorities, any person in these circumstances should reasonably expect to be haled into court in that forum state to answer for its actions directed at in-state residents.

In support of its position to the contrary, Elliott cites numerous decisions, most of which are inapposite and at least one of which is irreconcilable with the foregoing principles. While a case-by-case discussion of every authority mentioned in movant's brief would be unduly time-consuming and inefficient, a few sample cases suffice to make the point. For example, Elliott cites *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523 (10th Cir. 1996), which involved a Colorado attorney's opinion letter alleged to have contained misrepresentations. In *Trierweiler*, however, the opinion letter was sent to Colorado by the defendant, who was then sued in Michigan on the basis that the plaintiff (a Florida resident) had relied on that letter to its detriment. *Id.* at 1534. Under those circumstances, the Tenth Circuit concluded that Michigan lacked personal jurisdiction over the lawyer. *Id. Trierweiler* is markedly different from this case because the opinion letter at issue there was not directed to a resident of the forum state and was not alleged to have injured a resident of the forum state. Next, Elliott cites *International Medical Group v. American Arbitration Association, Inc.*, 312 F.3d 833 (7th Cir. 2002), wherein the Seventh Circuit found no personal jurisdiction over an out-of-state law firm whose contacts with the forum state "were at most tangentially related to the arbitration that is the subject of the current dispute." *Id.* at 845. By contrast, Elliott's contacts with Alabama lie at the core of the dispute animating this lawsuit.

Elliott also points to *Nash Finch Co. v. Preston*, 867 F. Supp. 866 (D. Minn. 1994), wherein a Kentucky lawyer was sued in Minnesota by Nash Finch for actionable misrepresentation and the like based on an opinion letter mailed to Minnesota in which the

---

Plaintiff .... It was directed to, and did, reach and injure the Plaintiff in Alabama." (Doc. 50, at ¶ 19.) Likewise, the First Amended Complaint reflects that in telephonic communications with Professional's lawyers in Alabama, Elliott "continued to misrepresent and conceal the lack or non-existence of any actual insurance," and that such misrepresentations "were an overt act in the conspiracy to deceive and defraud Plaintiff and were made in and to a person in the State of Alabama." (*Id.*, ¶ 20.) In litigating its Motion to Dismiss, Elliott has submitted no evidence refuting that it sent those letters to Alabama residents or engaged in telephone contact with Alabama residents, or contesting that the contents of those communications were foreseeably injurious to Professional in Alabama.

Kentucky lawyer represented to Nash Finch that he had reviewed certain loan documents. The court recognized authorities allowing the exercise of jurisdiction over a non-resident defendant who intentionally directs tortious communications at an in-state plaintiff, then distinguished those cases because they did not involve communications by an out-of-state lawyer. In essence, then, *Nash Finch* found that the rules of personal jurisdiction differ for attorneys and that attorneys should receive a greater measure of constitutional protection from being haled into another forum than litigants of other professions. In so concluding, the *Nash Finch* court reasoned that "[a] contrary rule would mean that anytime a lawyer sent a letter beyond his or her own state's borders, that lawyer would be subject to the jurisdiction of the state of the addressee. ... Such a possibility is absurd." *Nash Finch*, 867 F. Supp. at 868-69.

    *Nash Finch* is undoubtedly correct that it would be absurd if that "contrary rule" perforce came to pass. But that extreme, exaggerated alternative ignores an expansive middle ground recognized in case after case. It is not true that sending <u>any</u> letter to another state automatically exposes one to personal jurisdiction in that state; therefore, the doomsday scenario against which *Nash Finch* railed was never a plausible outcome. However, as discussed *supra*, when a person intentionally directs tortious communications into another state with a design to cause harm to a resident of that state, he has purposefully availed himself of the privilege of conducting activities in that state and can reasonably expect to be haled into court in that other state. There is nothing absurd or improper about applying this bedrock legal principle with equal force to practicing attorneys as it would apply to any other person or entity. As discussed above, anyone who intentionally directs tortious communications to another state with a design to injure someone in that state is subject to personal jurisdiction therein under due process principles. There is no basis in logic or law why lawyers should receive special treatment or why due process restrictions on personal jurisdiction should be interpreted more stringently for attorneys than for anyone else. The Court therefore declines to endorse the attorney/non-attorney distinction championed by *Nash Finch*.[5]

---

[5] The *Nash Finch* court purported simply to be following decisional authority such as *Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990), and *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223 (8th Cir. 1987). But neither of those cases support this result. In *Sher*, an out-of-state law firm made contacts by telephone, letter, and in person with an in-state client, who later sued

Elliott also cites multiple cases for the proposition that neither an out-of-state lawyer's routine correspondence with an in-state client nor his out-of-state activities on behalf of that client can, by themselves, establish personal jurisdiction. But we have far more than that here. Insofar as the undersigned can determine, none of those authorities cited by Elliott involve allegations of intentional fraudulent communications aimed at an in-state resident. That is precisely Professional's claim against Elliott here; therefore, these decisions relied upon by Elliott serve merely to muddy the analytical waters and are unhelpful to the personal jurisdiction analysis in this case.[6]

Ultimately, the Court finds that this case is aligned with the Eleventh Circuit's rationale for finding personal jurisdiction in a different context, wherein the panel explained as follows:

> "The defendants are not being haled into a Florida court as the result of any random, fortuitous, or attenuated contacts, or because of any unilateral activity by the Decedent. The nature of the professional services rendered in this case was such that the defendants were fully aware that their actions or omissions would have a substantial effect in Florida. They should have reasonably anticipated the possibility of a suit arising from conduct directed towards the Florida Decedent. We conclude each defendant has purposefully directed his activities at the forum sufficient to establish minimum contacts."

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 259 (11th Cir. 1996). Although the

---

the firm for malpractice; however, there appeared to be no allegation of any intentional tort being directed at the in-state client. Thus, *Sher* is distinguishable from both the circumstances presented in *Nash Finch* and those at issue here. Likewise, in *Austad*, an out-of-state law firm had ongoing dealings with an in-state client, who later sued the firm for breach of fiduciary duty. Again, unlike in *Nash Finch* and unlike in this case, there were apparently no claims of the law firm intentionally directing fraudulent communications at an in-state resident. Thus, neither *Sher* nor *Austad* justifies the *Nash Finch* leap, or otherwise alters this Court's analysis.

[6]     At the risk of beating a dead horse, the Court observes that Elliott quotes a passage from *Kowalski v. Doherty, Wallace, Pillsbury & Murphy, Attorneys at Law*, 787 F.2d 7 (1st Cir. 1986), in which the court wrote, "This is not an example of exercising personal jurisdiction when a resident has been injured within a state by conduct directed at that state." *Id.* at 11. That may well have been true in *Kowalski*, but it is not true here. Professional claims that Elliott intentionally, fraudulently directed communications at it in Alabama in an effort to deceive and mislead Professional about insurance issues in furtherance of a conspiracy among Elliott, Prime and other defendants. Thus, *Kowalski* has no application here, because this case is precisely what *Kowalski* is not. The excerpt quoted by Elliott merely highlights the distinction.

circumstances in *Robinson* differed from those here, the *Robinson* conclusion resonates in this case. Elliott is not being haled into court in Alabama because of random or fortuitous contacts, but rather because in the course of providing professional services to a client Elliott is alleged to have intentionally directed false and misleading communications to an Alabama resident, causing injury in Alabama. Under these circumstances, Elliott should have reasonably anticipated the possibility of being sued in Alabama over such conduct, and it has purposefully directed its activities at the state of Alabama in a manner sufficient to establish minimum contacts. Simply put, Elliott has established sufficient direct contacts with Alabama to subject it to personal jurisdiction in this forum.[7]

### b. Fair Play and Substantial Justice.

Of course, a finding of minimum contacts does not conclude the personal jurisdiction analysis in and of itself; rather, personal jurisdiction can only be exercised over one having minimum contacts with the forum if doing so would not offend traditional notions of fair play and substantial justice. *See Robinson*, 74 F.3d at 259 ("Minimum requirements of fair play and substantial justice may defeat the reasonableness of asserting personal jurisdiction even if the defendant has purposefully engaged in forum activities.") (citation omitted). This analysis weighs such factors as the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering fundamental substantive social policies. *See McGow*, 412 F.3d at 1216; *Mutual Service Ins. Co. v. Frit Industries, Inc.*, 358 F.3d 1312, 1320 (11th Cir. 2004); *Meier*, 288 F.3d at 1276.

---

[7] Having determined that Elliott possesses sufficient direct contacts with the forum state, it is unnecessary to consider plaintiff's alternative theory that personal jurisdiction would remain proper under a conspiracy theory of jurisdiction even in the absence of such direct contacts. *See generally Matthews*, 469 F. Supp.2d at 1066 ("Under the so-called 'conspiracy theory of jurisdiction,' personal jurisdiction can be exercised over a defendant who lacks minimum contacts to the forum state in the traditional sense if a substantial connection exists between that forum and a conspiracy entered into by that defendant.") (citation omitted); *Robert D. Harley Co. v. Global Force (H.K.) Limited*, 2007 WL 196854, *5 (S.D. Fla. Jan. 23, 2007) ("The co-conspirator theory permits a state to assert jurisdiction over a non-resident defendant who has no direct contacts with that state."); *McDonald*, 574 F. Supp. at 127 (similar).

In its Rule 12(b)(2) Motion, Elliott eschews any argument or discussion of the "fair play and substantial justice" prong of the due process test.[8] In light of this omission, the Court will not undertake to articulate and evaluate arguments the movant could have made, but elected not to make, in support of its motion to dismiss. *See, e.g., Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments"); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it"); *Pinto v. Universidad De Puerto Rico*, 895 F.2d 18, 19 (1st Cir. 1990) ("the court is under no duty to exercise imagination and conjure what a plaintiff might have alleged, but did not, and do counsel's work for him or her").[9]

---

[8] Instead, Elliott waves aside this aspect of the analysis with a simple statement that the Court need not reach it because the minimum contacts prong is not satisfied. (Movant Brief, at 12.) In taking such a position, Elliott places all of its eggs in the "minimum contacts" basket. The requisite minimum contacts having been found to exist, Elliott's omission of any "fair play and substantial justice" argument becomes significant.

[9] In any event, there is no reason to believe that the exercise of personal jurisdiction over Elliott would offend traditional notions of fair play and substantial justice. There is no evidence or suggestion that Elliott would face an extraordinary or unreasonable burden to defend against this lawsuit; to the contrary, it has already retained Alabama counsel to represent its interests herein. Moreover, the State of Alabama undoubtedly has a substantial interest in adjudicating disputes concerning alleged fraud and misrepresentation directed at its residents, and Professional has a substantial interest in obtaining convenient and effective relief in this forum. Besides, if Professional were forced to sue Elliott in Minnesota in order to establish personal jurisdiction over it, the result may be multiple lawsuits concerning the same transaction and events, given the potential jurisdictional and venue problems that Professional might face in attempting to join the other named defendants in a Minnesota suit. Unquestionably, the states' shared interest in efficient resolution of disputes is promoted by allowing this action to be litigated against all defendants (including Elliott) in a single action in a single forum, rather than piecemeal in several actions pending in several fora. For these reasons, any suggestion that the exercise of personal jurisdiction over Elliott in this forum would run afoul of traditional notions of fair play and substantial justice would lack merit.

**IV.     Conclusion.**

For all of the foregoing reasons, defendant Elliott Law Offices P.A.'s Motion to Dismiss for Lack of Personal Jurisdiction (doc. 55) is **denied**.  Elliott is **ordered** to file an answer on or before **August 27, 2007**.

DONE and ORDERED this 15th day of August, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE